UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

BIOTRONIK, INC., an Oregon            Case No. 3:12-cv-1057-AA
corporation, and MICHAEL JUE,              OPINION AND ORDER

            Plaintiffs,

    v.

ST. JUDE MEDICAL S.C., INC.,
a Minnesota corporation

            Defendant.
_____

AIKEN, Chief Judge:

    Plaintiffs filed suit in state court seeking a declaration
regarding the scope of plaintiff Michael Jue's post-termination
obligations to defendant St. Jude Medical S.C., Inc. (St. Jude),
his former employer. St. Jude removed the case to federal court
pursuant to 28 U.S.C. §§ 1332 and 1441, alleging jurisdiction
based on diversity of citizenship and the amount in controversy.
Plaintiffs now move for remand pursuant to 28 U.S.C. § 1447,

1 - OPINION AND ORDER

arguing that they seek only declaratory relief and do not allege the threshold amount in controversy necessary to establish diversity jurisdiction. St. Jude opposes the motion for remand and moves to dismiss or to stay this action pending resolution of a Minnesota state court action involving the same parties. The motion to remand is denied and the motion to dismiss is granted.

## BACKGROUND

Plaintiff Biotronik, Inc. (Biontronik) is an Oregon corporation doing business in the State of Oregon, and Jue is a resident of the State of New York. St. Jude is a Minnesota corporation with its principal place of business in Texas.

Biotronik and St. Jude are competitors in the sale and marketing of cardiac rhythm management (CRM) devices. CRM devices use electrical pulses to treat improperly beating hearts and other cardiac conditions. According to Biotronik's complaint, the market for CRM devices is very competitive and the devices are technologically complex. As such, the people who sell and manage the sale of these devices must be skilled salespeople and managers with technical and clinical knowledge of the devices. Accordingly, both Biotronik and St. Jude require their sales representatives and managers to sign employment agreements that include post-termination noncompetition,

confidentiality, and non-solicitation obligations (Post-Termination Obligations).

In 2007, Biotronik and St. Jude entered into a Settlement Agreement that required the parties to provide forty-eight hours written notice of any intended lawsuit or claim "against each other or their respective employees, agents, or independent representatives." Donahue Decl. Ex. 1 at 2-3. If the parties are unable to resolve the dispute within forty-eight hours, "the party providing notice of the claim shall file the action necessary to resolve the claim if so desired." Id. Ex. 1 at 3.

Plaintiffs allege that Biotronik and St. Jude also entered into an "informal agreement" regarding noncompetition disputes. Under this alleged agreement, "only those [accounts] which the employee called upon or supported four or more times during their last year of employment will be included as non-compete accounts." See Compl. Ex. 1 (email communications between Biotronik and St. Jude representatives).

Jue was employed as a sales representative at St. Jude and was responsible for selling and marketing CRM and other medical device products in the Long Island, New York area. Jue signed an Employee Agreement with St. Jude that included Post-Termination Obligations regarding competition and solicitation. Specifically, his Employee Agreement provided:

///

7. Confidential Information and Assignment of Inventions

\*\*\*

. . . . Employee will not disclose to a third party or use for Employee's benefit Confidential Information of [St. Jude Medical S.C., Inc., "SJMSC"]. "Confidential Information" means any information used or useful in SJMSC's business that is not generally known outside of SJMSC and that is proprietary to SJMSC relating to any aspect of SJMSC's existing or reasonably foreseeable business which is disclosed to Employee or conceived, discovered or developed by Employee. Confidential Information includes but is not limited to: product designs, including drawings and sketches; marketing materials; marketing plans or proposals; customer information; manufacturing processes; price, accounting and cost information; clinical data; administrative techniques and documents; and information designated by SJMSC as "Confidential."

\*\*\*

8. Non-Competition. During Employee's employment and for a period of one (1) year after the date of termination of employment with SJMSC for any reason, Employee will not directly or indirectly engage as a consultant, independent contractor, proprietor, stockholder, partner, co-venturer, officer, director, employee, or in any other capacity with any business which designs, manufactures or sells products which compete with products, now or later during Employee's employment, that are designed, manufactured or sold by SJMSC or any of its affiliates in the territory assigned to Employee during the last year of Employee's employment. . . . For a period of one (1) year after the date of termination of employment with SJMSC for any reason, Employee will not directly or indirectly sell, demonstrate, promote, solicit or support the sale of, support of supervise the implantation or other use of, or otherwise have any involvement with the sale or use of any product which competes with any products which Employee sold or solicited the sale of during Employee's employment, to or with any customer upon whom Employee called during the last year of Employee's employment. For a period of one (1) year after the date of termination

4 - OPINION AND ORDER

of employment with SJMSC for any reason, Employee will not directly or indirectly influence or attempt to influence such customers to direct their business involving products sold by Employee to any competitor of SJMSC.

9. Non-Solicitation. During Employee's employment and for a period of one (1) year after termination of Employee's employment with SJMSC for any reason, Employee will not, directly or indirectly, solicit on Employee's own behalf or on behalf of another person or entity, the services of any person who is an employee or sales representative of SJMSC or any of its affiliates, or solicit any of SJMSC's or its affiliates' employees or sales representatives to terminate their employment in order to compete with St. Jude Medical, Inc., SJMSC or any of their affiliates.

Hickey Decl. Ex. A at 6-8.

The Employment Agreement also contained provisions governing choice of law, forum selection, and jurisdiction:

10. Miscellaneous

\*\*\*

G. Governing Law. This Agreement will be governed by the laws of the state of Minnesota without giving effect to the principles of conflict of laws of any jurisdiction.

H. Exclusive Jurisdiction. All actions or proceeding relating to this Agreement will be tried and litigated only in the Minnesota State or Federal Courts located in Ramsey County, Minnesota. Employee submits to the exclusive jurisdiction of these courts for the purpose of any such action or proceeding, and this submission cannot be revoked. Employee understands that Employee is surrendering the right to bring litigation against SJMSC outside the State of Minnesota.

Hickey Decl. Ex. A at 9.

5 - OPINION AND ORDER

On or about May 18, 2012, Jue accepted an offer from Biotronik and left his employment with St. Jude. Subsequently, Biotronik provided St. Jude with a list of accounts (the List) subject to Jue's Post-Termination Obligations. St. Jude disputes the accuracy of the List and asserts that numerous other hospital and physician accounts are subject to Jue's Post-Termination Obligations.

After the parties could not resolve their disagreement over the List, plaintiffs filed suit in Circuit Court for Clackamas County seeking a declaration that "Jue's Post-Termination Obligations to [St. Jude] relating to noncompetition . . . are as described in the List." Compl. at 3.

St. Jude removed the case to federal court based on diversity jurisdiction. Plaintiffs move to remand the cases to state court for lack of subject matter jurisdiction, and St. Jude moves to dismiss for improper venue or to stay the action pending resolution of a case brought by St. Jude in Minnesota state court.[1]

///

---

[1] On March 27, 2012, St. Jude filed suit against Biotronik and several former St. Jude employees, alleging violations of restrictive covenants contained in the relevant Employment Agreements. On May 29, 2012, St. Jude amended the complaint and added Jue as a defendant. The Minnesota state court recently denied Biotronik's motions to stay and granted St. Jude's motions for temporary injunctive relief. Notice of Filing in Related Case (doc. 30) Ex. A.

### DISCUSSION

#### A. Subject Matter Jurisdiction

A party asserting diversity jurisdiction must allege complete diversity of citizenship between the parties and an amount in controversy of at least $75,000. 28 U.S.C. § 1332(a); Caterpillar Inc. v. Lewis, 519 U.S. 61, 68 (1996) (discussing requirements of diversity to establish subject matter jurisdiction). Here, the parties are of diverse citizenship, and the only issue is the amount in controversy.

To warrant dismissal or remand, "'it must appear to a legal certainty that the claim is really for less than the jurisdictional amount.'" Budget Rent-A-Car Inc. v. Higashiguchi, 109 F.3d 1471, 1473 (9th Cir. 1997) (quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)). "Under this 'legal certainty' standard, the federal court has subject matter jurisdiction unless 'upon the face of the complaint, it is obvious that the suit cannot involve the necessary amount." Travelers Prop. Cas. Co. of Am. v. Zurich Am. Ins. Co., 2012 WL 3042993, at *1 (D. Ariz. July 25, 2012) (internal quotation marks and citation omitted).

On the face of plaintiffs' complaints, they do not claim damages or monies owed by St. Jude. Rather, plaintiffs seek a declaration that Jue's Post-Termination Obligations are reflected accurately in the List provided to St. Jude. Stated

another way, plaintiffs seek a declaration that Jue may solicit the disputed accounts in accordance with the Post-Termination Obligations of his Employment Agreement.

When declaratory relief is sought, "it is well established that the amount in controversy is measured by the value of the object of the litigation." Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977). St. Jude bears the burden of establishing by a preponderance of the evidence that the value in this case exceeds $75,000. Cohn v. Petsmart, Inc., 281 F.3d 837, 839 (9th Cir. 2002) ("To support removal based on diversity jurisdiction, [the defendant] has the burden of proving, by a preponderance of the evidence, that the amount in controversy exceeds $75,000."). A court may consider supplemental evidence provided by the removing defendant, even if such evidence was not included in the removal notice. Id. at 840.

Contrary to plaintiffs' assertion, the object of the litigation is not the accuracy of the List or the terms of the Settlement Agreement between Biotronik and St. Jude. Rather, the object of the litigation is Jue's ability to solicit the disputed accounts. See Hunt, 432 U.S. at 347 (finding that the object of the litigation was "the right of the individual Washington apple growers and dealers to conduct their business affairs in the North Carolina market free from the interference of the challenged statute" and that "[t]he value of that right

8 - OPINION AND ORDER

is measured by the losses that will follow from the statute's enforcement"); cf. Davis v. Advanced Care Tech., Inc., 2007 WL 1302736, at *2 (E.D. Cal. May 02, 2007) ("Where the object of the litigation is a noncompetition agreement designed to protect a company's confidential information, the value to the company of protecting that information is the amount in controversy.").

St. Jude argues that in determining the value of Jue's ability to solicit accounts, the court may look to the value of the disputed accounts and Jue's compensation, and that based on such evidence, this case easily meets the threshold amount. See Mahoney v. Depuy Orthopaedics, Inc., 2007 WL 3341389, at *5-6 (E.D. Cal. Nov. 8, 2007) (in action seeking to prohibit enforcement of non-competition clause, court looked to the plaintiff's compensation and sales revenue to determine amount in controversy); see also Luna v. Kemira Specialty, Inc., 575 F. Supp. 2d 1166, 1172-73 (C.D. Cal. 2008) (accord); Basicomputer Corp. v. Scott, 791 F. Supp. 1280, 1286 (N.D. Ohio 1991), aff'd 973 F.2d 507 (6th Cir. 1992) (in action seeking enforcement of non-competition covenants, court looked to commission statements, profits from sales revenue, and estimated lost revenue to determine the amount in controversy).

For example, St. Jude emphasizes that Jue managed numerous physician and hospital accounts for St. Jude, including the "key" hospital account with St. Francis Hospital, an account in

9 - OPINION AND ORDER

dispute. St. Jude maintains that "St. Francis is one of the
busiest CRM hospital in the country and is a multi-million
dollar source of annual revenue" for St. Jude. Arancio Decl. at
12. Further, St. Jude's CRM devices cost approximately $3,400 to
$18,000 each, and annual CRM sales revenues for the disputed
accounts totaled over $20 million at the time Jue left his
employment with St. Jude. See Arancio Decl. at 2, 12. Thus, St.
Jude maintains that Jue's ability to solicit the disputed
accounts could result in potential losses far exceeding the
jurisdictional amount. Further, St. Jude emphasizes that Jue's
compensation for 2011 totaled over $200,000, thus providing
additional evidence of the value of his ability to solicit the
disputed accounts. See Hawks Decl. at 2.

Plaintiffs argue that St. Jude's assertions regarding the
amount in controversy are conclusory and speculative. Plaintiffs
maintain that St. Jude presents no evidence to establish any
direct link between Jue's ability to solicit and the potential
losses to St. Jude. Lowdermilk v. U.S. Bank Nat'l Ass'n, 479
F.3d 994, 1002 (9th Cir. 2007) (a court cannot base jurisdiction
on a defendant's "speculation and conjecture"); Biotronik v. ELA
Med., Inc., Case No. BC 357665 (C.D. Cal. 2006) (finding that
defendant "failed to show a direct link between its projected

10 - OPINION AND ORDER

loss of revenue and non-enforcement of the Agreement").[2] Plaintiffs further contend that a declaration regarding the accuracy of the List results in no "pecuniary result" to either party. See In re Ford Motor Co./Citibank (South Dakota), N.A., 264 F.3d 952, 958 (9th Cir. 2001) ("Under the 'either viewpoint' rule, the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce.").

Importantly, St. Jude need only show by a preponderance of the evidence that the value of Jue's ability to solicit the disputed accounts exceeds $75,000. Cohn, 281 F.3d at 839. Plaintiffs do not dispute that Jue received a high level of compensation in exchange for his services and his acceptance of the Post-Termination Obligations. While evidence of Jue's total compensation may not establish the specific dollar value of his ability to solicit the disputed accounts, such evidence renders the court hard-pressed to find that Jue's services are valued at less than $75,000 by Biotronik or by Jue himself. See Luna, 575 F. Supp. 2d at 1172-73; Mahoney, 2007 WL 3341389, at *5-6.

---

[2] Plaintiffs and St. Jude also cite Judge Simon's ruling in Biotronik, Inc. v. Medtronic USA, Inc., 840 F. Supp. 2d 1251 (D. Or. Jan, 4, 2012) to support their respective arguments. However, that case did not involve a claim asserted by a former employee to resolve the scope of existing non-competition obligations. Thus, while informative, I do not find the case particularly supportive of the parties' positions in this case.

Further, a declaration in plaintiffs' favor would allow Jue to solicit accounts in the disputed areas, resulting in potential sales revenue to Biotronik and potential sales losses to St. Jude - revenues and losses that easily exceed the jurisdictional amount given the value of the CRM devices and the amount of sales revenue at stake. Davis, 2007 WL 1302736, at *1-2. Again, plaintiffs do not dispute that the sales revenue from the disputed accounts extends into the millions of dollars. Thus, I cannot find to a "legal certainty" that the amount in controversy is less than $75,000.

In sum, I find that St. Jude has established by a preponderance of the evidence that the value of Jue's ability to solicit the disputed accounts, and the potential gains and losses resulting from that ability, exceed the jurisdictional threshold of $75,000. Therefore, the motion to remand is denied.

## B. Forum Selection Clause and Venue

St. Jude moves for dismissal or transfer of this action based on the forum selection clause contained in Jue's Employment Agreement with St. Jude. The forum selection clause unambiguously provides that "[a]ll actions or proceeding relating to this Agreement will be tried and litigated only in the Minnesota State or Federal Courts located in Ramsey County, Minnesota." Hickey Decl. Ex. A at 9.

In the Ninth Circuit, forum selection clauses are deemed "presumptively valid" and "should be honored 'absent some compelling and countervailing reason.'" Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1140 (9th Cir. 2004) (quoting M/S Bremen v. Zapata Off-Shore Co., 404 U.S. 1, 12 (1972)). A forum selection clause generally is upheld unless:

> (1) its incorporation into the contract was the result of fraud, undue influence, or overweening bargaining power; (2) the selected forum is so gravely difficult and inconvenient that the complaining party will for all practical purposes be deprived of its day in court; or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought.

R.A. Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 325 (9th Cir. 1996) (internal quotation marks and citations omitted). "The party challenging the clause bears a 'heavy burden of proof.'" Murphy, 362 F.3d at 1140 (quoting M/S Bremen, 407 U.S. at 17).

Plaintiffs do not argue that the forum selection provision resulted from fraud or undue influence. Rather, plaintiffs contend that the forum selection clause does not apply because the declaratory relief sought implicates only the accuracy of the List provided by Biotronik pursuant to the terms of the Settlement Agreement and informal agreement between Biotronik and St. Jude. Accordingly, plaintiffs argue that this dispute does not involve Jue's obligations under the Employment Agreements. I disagree.

Granted, the parties dispute the accuracy of the Lists, which Biotronik provided in accordance with the terms of the Settlement Agreement between Biotronik and St. Jude. However, the crux of this case is not whether Biotronik or St. Jude has complied with the Settlement Agreement but whether Jue may solicit disputed accounts in accordance with his Post-Termination Obligations set forth in his Employment Agreement. Indeed, in support of their motion for remand, plaintiffs specifically assert that this case "focuses . . . on the scope of Jue's post-termination obligations" and seeks a declaration "that Jue is properly performing all of his enforceable post-termination obligations to St. Jude." Pls.' Reply Mem. at 3, 8. Thus, contrary to plaintiffs' assertions in opposing dismissal, the court must analyze whether Jue's solicitation of disputed accounts complies with his Post-Termination Obligations. See Pls.' Mem. in Opp'n to Dismiss/Transfer at 2, 7.

Plaintiffs also argue that Biotronik cannot be bound by the forum selection clause because it was not a party to the Employment Agreement. However, the Ninth Circuit has ruled that a forum selection clause may be enforced against a non-party when the conduct of the non-party is "closely related to the contractual relationship" between the signatory parties. Holland Am. Line, Inc. v. Wartsila N. Am., Inc., 485 F.3d 450, 456 (9th Cir. 2007) (citing Manetti-Farrow, Inc. v. Gucci Am., Inc., 858

F.2d 509 (9th Cir. 1988)). Here, Biotronik's claim arises from the Employment Agreement between Jue and St. Jude and is therefore "closely related" to that contractual relationship. Absent the Employment Agreement, Biotronik would have no need for a declaration that the List reflects Jue's Post-Termination Obligations.

Accordingly, I find that plaintiffs are bound by the forum selection clause in Jue's Employment Agreement, and that venue is improper in this District. Rather than a stay of this case, I find dismissal appropriate in light of the pending state court action in Minnesota.

## CONCLUSION

Plaintiffs' Motion to Remand (doc. 9) is DENIED, and defendant's Motion to Dismiss and Alternative Motion to Transfer (doc. 5) is GRANTED. This action is DISMISSED without prejudice. IT IS SO ORDERED.

Dated this 5th day of Aug, 2012.

Ann Aiken
United States District Judge